**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|                          |     |                                 |
|--------------------------|-----|---------------------------------|
|                          | )   |                                 |
| M.O., <u>et al.</u>,     | )   |                                 |
|                          | )   |                                 |
|   Plaintiffs,  | )   |                                 |
|                          | )   |                                 |
|    v.     | )   | Civil Action No. 11-1695 (RBW)  |
|                          | )   |                                 |
| DISTRICT OF COLUMBIA     | )   |                                 |
|                          | )   |                                 |
|   Defendant.   | )   |                                 |
|                          | )   |                                 |

---

## MEMORANDUM OPINION

The plaintiffs in this civil case, M.O., through her parents, Elizabeth Seymour and Robert Ourlian, allege that the defendant, the District of Columbia ("District"), failed to provide M.O. with the free appropriate public education ("FAPE") to which she is entitled under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 (2006). Complaint ("Compl.") ¶¶ 74-80. The parties filed cross motions for summary judgment, and United States Magistrate Judge John Facciola issued a Report and Recommendation recommending that both motions be denied and that the matter be remanded to the hearing officer. Report and Recommendation ("R&R") at 26. Currently before the Court are the parties' objections to Magistrate Judge Facciola's Report and Recommendation. After careful consideration of the parties' arguments and the administrative record,[1] the Court concludes for the reasons that follow

---

[1] In addition to the submissions already identified, as well as Magistrate Judge Facciola's Report and Recommendation ("R&R") and the Administrative Record ("AR"), the Court considered the following submissions by the parties in rendering its decision: (1) the Plaintiffs' Motion for Summary Judgment ("Pls.' Mot."); (2) the Defendant's Cross Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Def.'s Mot."); (3) the Plaintiffs' Opposition to Defendant's Cross Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Pls.' Cross Opp'n"); (4) the Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Def.'s Cross Reply"); (5) the Plaintiffs' Objections to the Report and Recommendations ("Pls.' Obj."); (6) the Defendant's Opposition to Plaintiffs' Objections to the Magistrate's Report and Recommendation ("Def.'s Opp'n"); (7) the Defendant's

(continued . . .)

that it must accept the Report and Recommendation, deny both motions for summary judgment without prejudice, vacate the hearing officer's determination, and remand the matter to the hearing officer for further evaluation of the evidence.

## I. BACKGROUND

The full factual background of this action has already been laid out in great detail in Magistrate Judge Facciola's Report and Recommendation, <u>see</u> R&R ¶¶ 1-134, and the parties have not objected to the findings of fact contained therein, <u>see generally</u>, Pls.' Obj.; Def.'s Opp'n; Def.'s Obj.; Pls.' Opp'n; Def.'s Reply, and thus this Court will not repeat all of those facts again here. The following facts are relevant to the parties' objections.

M.O. began receiving speech therapy when she was two and a half years old, and continued that therapy as well as occupational therapy while attending preschool at the Franklin Montessori School. R&R ¶¶ 5-8. At the recommendation of M.O.'s speech therapist, she subsequently attended the Maddux School because of its small class sizes, <u>id.</u> ¶¶ 9-10, which consisted of twelve children and at least three staff teachers, <u>id.</u> ¶ 11.

Over several months in late 2009 and early 2010, several professionals conducted evaluations of M.O.:

- Dr. Paula Elitov conducted a psycho-educational evaluation of M.O. on October 29, 2009, November 9, 2009, and November 16, 2009, in which she diagnosed M.O. with a learning disability, not otherwise specified (NOS), and attention deficit

(. . . continued)
Objections to the Magistrate's Report and Recommendation ("Def.'s Obj."); (8) the Plaintiffs' Opposition to Defendant's Objections to the Report and Recommendations ("Pls.' Opp'n"); (9) the Defendant's Reply to Plaintiffs' Opposition to Defendant's Objections to the Magistrate's Report and Recommendation ("Def.'s Reply"); and (10) the plaintiffs' Notice of Supplemental Authority.

2

disorder, primarily the inattentive type.  Id. ¶ 15.  Among other educational supports, Dr. Elitov recommended a "small group setting" for M.O.  Id. ¶ 15.

- Dr. Larry Silver conducted a psychiatric evaluation of M.O. on February 8, 2010, id. ¶ 16, and recommended that "[b]ased on the recommendations of the full faculty at the Maddox [sic] School, [M.O.] should continue next year in an intensive special education program that can address her learning, language, and motor disabilities."  Id. ¶ 17.

- Beth Ciangiulli-Levy, a Speech-Language Pathologist, issued a speech and language re-assessment summary for M.O. on March 2, 2010, which recommended that M.O. continue with weekly speech and language therapy.  Id. ¶ 18.

- Allison Misttrett of Leaps and Bounds Pediatric Occupational Therapy evaluated M.O. on March 29, 2010, and April 1, 2010, and recommended that M.O. receive "'individual occupational therapy services 1-2 times per week for 1 hour'" and that the therapist should be "'trained and certified in sensory integration therapy.'"  Id. ¶ 19 (citation omitted).

The Lab School, a private, special education school, Compl. ¶ 20, also conducted an Intermediate Speech and Language Assessment of M.O. on June 10 and 11, 2010, and proposed an Individualized Education Program ("IEP") for the 2010-2011 school year.  R&R ¶ 21.  The assessment was conducted by Kathryn Riverso, a Speech-Language Pathologist.  Id. ¶¶ 21-22. She concluded that M.O. would do best in a classroom with "'a small teacher-student ratio, specialized teachers and instruction methods (e.g., hands-on, kinesthetic learning), and speech-language therapy and other related services in a pull-out format and integration of these services within the classroom.'"  Id. ¶ 22 (citation omitted).

The plaintiffs completed the District's Private-Religious Student Referral for Special Education Services form on June 16, 2010, id. ¶ 23, and subsequently notified Dr. Shellie Wood, the Special Education Coordinator at Janney Elementary School ("Janney Elementary"), the public elementary school in their area, that they wanted to convene a multidisciplinary team to address M.O.'s educational disability and her need for special education, id. ¶ 24. On July 15, 2010, before a multidisciplinary team was convened, the plaintiffs informed Dr. Wood that M.O. would not be attending Janney Elementary for the 2010-2011 school year, but would instead attend the Lab School. Id. ¶ 26. At Dr. Wood's request, the plaintiffs permitted members of the multidisciplinary team to observe M.O. at the Lab School, and also permitted District officials to obtain information about M.O. from the Maddux School. Id. ¶¶ 27-29.

Dr. Wood received M.O.'s 2009-2010 School Progress Report from the Maddux School after it was sent to her on September 13, 2010, in which the head teacher at Maddux stated that M.O. "'works best in small groups and benefits from sitting next to a teacher who can help her maintain her focus and reassure her about interfering concerns.'" Id. ¶ 30 (citation omitted). A multidisciplinary team meeting was held on September 21, 2010, and on October 5, 2010, the Lab School issued its IEP for M.O. Id. ¶¶ 31-32. Dr. Wood received M.O.'s academic scores and the Lab School IEP, which were sent to her on October 15, 2010. Id. ¶ 34.

Deborah Lahre-Joyner, a District Psychologist, observed M.O. at the Lab School, reviewed multiple reports, including those prepared by Doctors Elitov and Silver, and thereafter issued a Review of Independent Educational Evaluation report on October 25, 2010, in which she recommended that M.O. "'continue to receive specialized instruction in all academic areas due to weaknesses in multiple areas of functioning.'" Id. ¶ 35 (citation omitted).

Dr. Wood issued a Prior Written Notice form on November 1, 2010, stating that M.O. met the criteria to be identified as a student with a disability under the IDEA and that she required special education and similar services.  Id. ¶ 38.  On November 17, 2010, the same day as M.O.'s next multidisciplinary team meeting, Dr. Wood issued a Prior Written Notice which stated:

> [The District] offers & proposes placement in [M.O.'s] neighborhood school; Janney Elementary in accordance with the Least Restrictive Environment [("LRE")] of IDEA.  [The District] rejects the parent[s'] request for [a] full time special education separate school setting as that would deny LRE.  Janney can provide all requirements in [the] IEP by providing placement in a generalized class with inclusion support and instruction in a separate class for remediation in reading[,] writing and math.  A dedicated aide will provide small group instruction as needed.

Id. ¶ 40.  The District also issued an IEP for M.O. on November 17, 2010, which provided for a set number of hours per week of specialized training in various subjects in both a "General Education" and an "Outside General Education" setting, as well as "the support of a full-time dedicated aide" for M.O.  AR at 6; R&R ¶ 42.  Despite the issuance of the District's IEP, M.O.'s mother did not remove her from the Lab School due to concerns that M.O. would be unable to handle the pace of the classroom, the noise, and the large class size at Janney Elementary.  Id. ¶ 46.

In March 2011, the plaintiffs hired Amy Mounce, an Educational Consultant, to conduct a comparison between the District's proposed program and M.O.'s then current educational program at the Lab School.  Id. ¶ 47.  Mounce concluded that M.O. benefitted from a special education program with a low student-teacher ratio, that the Lab School provided such an environment and the proper educational supports, that M.O. could become overly reliant on the use of a dedicated aide, and that the District's proposed program did not provide sufficient behavior supports for M.O.  Id.  The plaintiffs subsequently filed an administrative Due Process

Complaint Notice, which presented three questions concerning the District's November 17, 2010 IEP, id. ¶ 48; AR at 260, specifically:

1. Did [the District] deny [M.O.] a FAPE by failing to develop an appropriate IEP for the 2010/2011 school year?
2. Did [the District] deny [M.O.] a FAPE by failing to propose a proper placement?
3. Is The Lab School of Washington a proper placement for [M.O.]?

AR at 265. The hearing officer, Bruce Ryan, issued a Pre-Hearing Order in June 2011, which confirmed that the parties had agreed during a pre-hearing conference that the case presented the same three issues enumerated in the plaintiffs' administrative Due Process Complaint Notice. R&R ¶ 55; AR at 294-96.

During the course of the administrative due process hearing, two expert witnesses testified that M.O. required a full-time special education program, that the use of a full-time dedicated aide would be inappropriate and unnecessary, and that the Lab School was able to provide M.O. with the required educational supports, while Janney Elementary was unable to do so. R&R ¶¶ 59-73 (discussing the testimony of Dr. Jennifer Durham, who holds a Ph.D. in education focusing on special education, and educational consultant Amy Mounce). Five other expert witnesses testified that they believed the District's November 17, 2010 IEP was appropriate, and each specifically stated that she approved of the component of the IEP that called for a full-time dedicated aide for M.O. Id. ¶¶ 77-129 (discussing testimony of Janney Elementary social worker Maureen Leventhal; Janney Elementary speech language pathologist Toni Wills; Janney Elementary principal Norah Lycknell; Joyner; and Dr. Wood). In their written closing argument, the plaintiffs asserted that the District officials had failed to review all of the information concerning M.O. that M.O.'s parents had submitted to them. AR at 10.

The hearing officer issued his determination on July 7, 2011, which stated:

The November 17, 2010 IEP provides extensive special education and related services in a combination setting that appears to reflect reasonable judgments by the educational professionals and other members of the Student's IEP team as to how to serve her unique educational needs in the least restrictive environment, based on the information available to the team as of that date. [The District] has also offered an educational placement that can implement the IEP and is otherwise appropriate to meet the Student's demonstrated needs. As such, this program and placement are reasonably calculated to provide meaningful educational benefit. No more is required of [the District] under the IDEA.

Id. at 9-10. The hearing officer further determined that the plaintiffs had waived the issue of whether the District had failed to review information about M.O. submitted by her parents because they did not raise that issue in their administrative due process complaint. Id. at 10.

On September 20, 2011, the plaintiffs filed a complaint in this Court seeking declaratory and injunctive relief and alleging that the District "failed to provide M.O. with the [FAPE] to which she is entitled under the [IDEA]." Compl. ¶ 1. The plaintiffs also contended that "[t]he Hearing Officer who decided this action compounded the IDEA violation when he failed to render a fair or complete decision" and that

the Hearing Officer literally ignored significant evidence in the record, failed to reference in any way the faulty schedule given by [the District] to the parents, failed to rule on the school system's blatant disregard of M.O.'s documentation of the extent of her disability, and summarily dismissed the deleterious effects of a one-to-one aide on M.O.'s independence and continued development.

Id. They alleged further that

[t]he Hearing Officer erred in issuing a Decision that concluded that the [IEP] offered by [the District] in November of 2010 for the 2010-2011 school year constituted a FAPE that could be implemented at the proposed school placement. The Hearing Officer similarly erred in determining that the parents were not entitled to receive tuition reimbursement for the 2010-2011 school year."

Id. ¶ 2.

The parties filed cross motions for summary judgment, which were referred to Magistrate Judge Facciola for a Report and Recommendation. Magistrate Judge Facciola agreed with the

hearing officer's determination that because the plaintiffs did not raise the issue of whether the District failed to review information on M.O. submitted by her parents in their administrative due process complaint, they could not raise that issue at the administrative due process hearing. R&R at 24.  Magistrate Judge Facciola also found that the hearing officer erred by failing "to grapple with all of the evidence before him" and by failing "to explain why he accepted [the District's] position that M.O. could secure some educational benefit from placement in a general education setting" and subsequently rejected the evidence to the contrary.  Id. at 25.  He thus recommended that both motions for summary judgment be denied and that the matter be remanded to the hearing officer "for further evaluation of the evidence before him, particularly that evidence that contradicted his conclusion that M.O. could benefit from the general education setting proposed by [the District]."  Id. at 26.

The parties subsequently filed objections and oppositions to the Magistrate Judge's Report and Recommendation, which are the subject of this memorandum opinion.

## II. STANDARDS OF REVIEW

### A.       Objections to Report and Recommendation

Federal Rule of Civil Procedure 72(b) governs the Court's resolution of objections to a magistrate judge's report and recommendation on dispositive motions.  The Rule provides that "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  In their objections, the parties may not present new issues or arguments to the district judge; rather, "only those issues that the parties have raised in their objections to the Magistrate Judge's report will be reviewed by this court. . . .  Furthermore,

objecting to only certain portions of the Magistrate Judge's report 'does not preserve all the objections one may have.'" <u>Aikens v. Shalala</u>, 956 F. Supp. 14, 19-20 (D.D.C. 1997) (citations omitted). And "when a party makes conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." <u>Alaimo v. Bd. of Educ. of the Tri-Valley Cent. Sch. Dist.</u>, 650 F. Supp. 2d 289, 291 (S.D.N.Y. 2009).

**B.      Rule 56 Motion for Summary Judgment**

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate "that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the pleadings or other parts of the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). In assessing a motion for summary judgment, "the Court must draw 'all justifiable inferences' in the non-moving party's favor and accept the non-moving party's evidence as true." <u>Banks ex rel. D.B. v. District of Columbia</u>, 720 F. Supp. 2d 83, 87 (D.D.C. 2010) (Walton, J.) (quoting <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986)). Nevertheless, the non-moving party cannot rely on "mere allegations or denials," but "must set forth specific facts showing that there is a genuine issue for trial." <u>Burke v. Gould</u>, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting <u>Anderson</u>, 477 U.S. at 248) (internal quotation marks omitted). Furthermore, "in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." <u>Shays v. FEC</u>, 424 F. Supp. 2d 100, 109 (D.D.C. 2006) (citation omitted).

In reviewing a hearing officer's decision in an IDEA case, the Court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The Court's increased authority to hear additional evidence and apply the preponderance of the evidence standard "plainly suggests [that] less deference [is to be accorded to the hearing officer's determination] than is conventional in administrative proceedings." Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)) (internal quotation marks omitted). However, the "party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong." Id. (quoting Kerkam, 862 F.2d at 887) (internal quotation marks omitted). If "no additional evidence is introduced [by the parties] in a civil suit seeking review of [an administrative decision], a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." Thomas v. District of Columbia, 407 F. Supp. 2d 102, 109 (D.D.C. 2005) (citing 20 U.S.C. § 1415 (i)(2)(B); District of Columbia v. Ramirez, 377 F. Supp. 2d 63, 67 (D.D.C. 2005)).

### III. LEGAL ANALYSIS

#### A.      Waiver of Issue in Due Process Complaint

The plaintiffs object to the Magistrate Judge's conclusion that because they did not in their administrative Due Process Complaint Notice raise the issue of whether the District failed to examine all of the information that the plaintiffs had provided to the IEP team, the plaintiffs could not raise that issue at the due process administrative hearing. Pls.' Obj. at 1-3.

The IDEA's implementing regulations make clear that schools must consider information provided by a child's parents when conducting evaluations. See 34 C.F.R. § 300.304(b)(1) ("In conducting the evaluation, the public agency must [u]se a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child, including information provided by the parent."). But the IDEA provides also that "[t]he party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice . . . unless the other party agrees otherwise." 20 U.S.C. § 1415(f)(3)(B); see also 34 C.F.R. § 300.511(d) ("The party requesting the due process hearing may not raise issues at the due process hearing that were not raised in the due process complaint . . . unless the other party agrees otherwise.").

Here, the plaintiffs filed their administrative Due Process Complaint Notice in April 2011, challenging the District's November 17, 2010 IEP. And as noted above, the administrative Due Process Complaint Notice and the hearing officer's Pre-Hearing Order identified the same three issues concerning the IEP and its development. See AR at 260-66; 294-96. Neither the administrative Due Process Complaint Notice nor the Pre-Hearing Order mentioned the issue of whether the District failed to consider the totality of the information and evaluations provided to the IEP team by M.O.'s parents. Accordingly, the Court finds that the plaintiffs waived their ability to raise the issue now.[2] See 20 U.S.C. § 1415(f)(3)(B); 34 C.F.R. § 300.511(d); see also District of Columbia v. Pearson, 923 F. Supp. 2d 82, 87-88 (D.D.C. 2013) (finding that where an issue "was not raised in the due process complaint . . . was not identified as an issue during the

---

[2] In any event, the administrative record suggests that "[t]he [District] members" of M.O.'s multi-disciplinary team "reviewed the evaluations submitted by the parent and agree[d] with the conclusions and recommendations therein" before they "proceed[ed] with developing [the] IEP." AR at 94. But even if the District officials did not review all of the information provided by the parents, the hearing officer had the same information available to him during the hearing. Accordingly, and as discussed in further detail below, the hearing officer should have taken it into account when reviewing the plaintiffs' case.

pre-hearing conference . . . nor was it mentioned in the pre-hearing order," the issue could not be raised <u>sua sponte</u> by the hearing officer following the due process hearing in the hearing officer's determination).

The plaintiffs contend that "the issues that were before the [h]earing [o]fficer, including whether [the District] denied M.O. a FAPE by proposing an inappropriate IEP and placement, are directly related to the failure of the [IEP] team to consider the parents' documentation," and thus the "issues are intertwined." Pls.' Mot. at 13, n.5 (citation omitted). In advancing their position, the plaintiffs rely on <u>Gellert v. District of Columbia Public Schools</u>, a case in which another member of this Court found that a hearing officer erred in concluding that the issue of the appropriateness of the IEP had been waived. 435 F. Supp. 2d 18, 23-24 (D.D.C. 2006). The District[3] in <u>Gellert</u> "argue[d] that the [h]earing [o]fficer was only asked to consider whether Wilson could implement the . . . IEP, not whether the underlying IEP was adequate to provide educational benefit" to the student. <u>Id.</u> at 23. The Court found the argument "unpersuasive," in part because "since the very beginning of the administrative process, [the] [p]laintiffs ha[d] objected to the failure of the . . . IEP to include" appropriate accommodations. <u>Id.</u> By contrast, the plaintiffs here admit that they did not raise the issue until it was raised at the administrative due process hearing.[4] Pls.' Obj. at 1.

---

[3] The named defendant in <u>Gellert</u> was the District of Columbia Public Schools ("DCPS") rather than the District of Columbia itself. However, "[c]ourts in this District have held on numerous recent occasions that DCPS is <u>non sui juris</u>—that is, non-suable as an entity separate from the District of Columbia." <u>Blue v. District of Columbia</u>, 850 F. Supp. 2d 16, 22 (D.D.C. 2012) (collecting cases). Rather, "[t]he proper party against whom [a] [p]laintiff must bring her claims is the District of Columbia itself." <u>Id.</u> at 23.

[4] Further, unlike the substantive issues in <u>Gellert</u>, the issue that the plaintiffs raise in this case is procedural. Here, the plaintiffs seek to ensure that the District followed the proper procedures and reviewed the appropriate evidence. Such procedural issues are always properly considered by the hearing officer. And if, as the plaintiffs allege, "there is no indication that the school officials' expertise has been brought to bear on the individual needs of the handicapped child[,] . . . the deference [the hearing officer should] grant[] will be commensurately lower." <u>McKenzie v. Smith</u>, 771 F.2d 1527, 1535 n.17 (D.C. Cir. 1985) (citing <u>Davis v. Dist. of Columbia Bd. of Educ.</u>, 552 F. Supp. 1102, 1009 (D.D.C. 1981)).

**B.      The Hearing Officer's Failure to Consider All the Evidence**

The District "objects to the [Report and Recommendation's] conclusion that the hearing officer failed to consider all of the evidence before him, objects to the recommended remand, and maintains that" summary judgment is appropriate.  Def.'s Obj. at 1.

Although the IDEA provides no specific guidance concerning what specifically must be included in a hearing officer's determination, it states that "a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education."  20 U.S.C. § 1415(f)(3)(E)(i); see also 34 C.F.R. § 300.513(a)(1) ("[A] hearing officer's determination of whether a child received a FAPE must be based on substantive grounds.").  The District of Columbia Public Schools' Due Process Hearing Operating Procedures further elaborate upon the requirements of the hearing officer's determination and provide that "[t]he Hearing Officer's Determination must . . . include findings of fact and conclusions of law; identify who prevailed on what issue; and specify what the school system, the parent(s), and the child are expected to do to carry out the decision."  District of Columbia Public Schools, The Special Education Student Hearing Office Due Process Hearing Standard Operating Procedures § 1003 (emphasis added).

To be sure, "[a] court must give 'due weight' to the [hearing officer's determination] and 'may not substitute its own notions of sound educational policy for those of the school authorities.'"  Turner v. District of Columbia, __F. Supp. 2d__, __, 2013 WL 3324358, at *3 (D.D.C. 2013) (quoting S.S. v. Howard Rd. Acad., 585 F. Supp. 2d 56, 63 (D.D.C. 2008)).  However, "less deference is to be accorded to the [hearing officer's determination] than would be the case in a conventional administrative proceeding. . . . Thus, a court may not simply 'rely on the Hearing Officer's exercise of discretion,' for a decision 'without reasoned and specific

findings deserves little deference.'" Id. (quoting Reid, 401 F.3d at 521). So while a certain amount of deference should be accorded to the knowledge and expertise of the hearing officer, courts will accord less deference if the hearing officer's determination lacks reasoned and specific findings.

The Court's review of the hearing officer's determination in this case reveals that the determination lacks sufficiently detailed reasoning. The determination states in conclusory fashion that the "program and placement [outlined in the November 17, 2010 IEP] are reasonably calculated to provide meaningful educational benefit." AR at 9-10. In the face of extensive evidence to the contrary, including evaluations from Doctors Paula Elitov and Larry Silver; assessments of Kathryn Riverso and Amy Mounce; and testimony of Doctor Jennifer Durham and Amy Mounce, the Court is not convinced that the November 17, 2010 IEP was not inappropriate.

Unlike other cases where the plaintiffs alone testified in support of their position, see, e.g., Kerkam v. Superintendent, 931 F.2d 84, 88 (D.C. Cir. 1991), here several educational professionals provided support for the plaintiffs' position. The hearing officer's determination does little to address the concerns raised by those professionals. For example, in addressing the plaintiffs' argument that M.O. "requires self-contained special education," the hearing officer responds, with no citation to the administrative record or his findings of fact, by stating that "a public school program that incorporates sufficient support mechanisms and services . . . may well be an adequate (and less restrictive) alternative." AR at 10. And in response to the plaintiffs' argument that the District "'failed to consider the recommendations of professionals,' as reflected in [M.O.'s] various evaluations, in developing the IEP," the hearing officer states only that the District did in fact consider the recommendations. Id. at 10-11. There is no

discussion of the adequacy of the District's consideration of the recommendations, or why the District's review of the evaluations was credited over those of the plaintiffs' witnesses. Id.

Because the Court "may not substitute its own notions of sound educational policy for those of school authorities," Turner, __F. Supp. 2d at __, 2013 WL 3324358, at *3, the Court finds that on the record before it "a remand for further consideration of the evidence, and for further findings of fact and conclusions of law, is the only vehicle by which review consistent with the applicable statutory scheme can be accomplished," Options Pub. Charter Sch. v. Howe ex rel. A.H., 512 F. Supp. 2d 55, 57-58 (D.D.C. 2007) (remanding case where hearing officer made "no findings with respect to the basis upon which she credited . . . testimony" and "elsewhere . . . relie[d] upon speculation"); see also Iowa v. FCC, 218 F.3d 756, 760 (D.C. Cir. 2000) (remanding case for further consideration because the Commission failed to address the petitioner's argument); Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997) ("[T]he [agency's] decision did not respond to two of [petitioner's] arguments, which do not appear frivolous on their face and could affect the [agency's] ultimate disposition . . . .").[5]

## IV. CONCLUSION

For the foregoing reasons, the Court will adopt Magistrate Judge Facciola's Report and Recommendation, deny the parties' motions for summary judgment, vacate the hearing officer's

---

[5] The defendant argues, Def.'s Reply at 2, that this Court should follow a decision authored by another member of this Court in which he refused to vacate and remand a hearing officer's determination because the determination was "sufficiently detailed to permit the district court to understand the basis for the hearing officer's resolution of the parents' claims . . . . and even if th[e] Court granted his assessment no deference, the administrative record fully support[ed] his conclusions," Anderson v. Dist. of Columbia, 606 F. Supp. 2d 86, 90 n.1 (D.D.C. 2009) (Leon, J.). The standard that the Court applied in Anderson is no different than that applied here. In Anderson, the Court observed that the IEP's "attributes align[ed] almost exactly with those recommended by [the student's] educational advocate," whereas the plaintiffs rested their objections "on a single visit" to the school that the student was to attend. Id. at 92. On the contrary and as discussed above, the administrative record in this case presents a wealth of evidence on both sides of the ledger, and thus the hearing officer must more adequately explain his reasoning for choosing one position over the other.

decision, and remand the matter to the hearing officer for further evaluation and in particular to explain why certain evidence was credited in lieu of other conflicting evidence.

**SO ORDERED** this 30th day of September, 2013.[6]

REGGIE B. WALTON
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.